121 So.2d 145 (1960)
C.W. SHELTON, B.H. Stone, D.M. Cox, Woodrow Aultman, and Albert Tindel, As and Constituting the Board of County Commissioners of Calhoun County, Florida, Appellants,
v.
W.C. REEDER, Sheriff of Calhoun County, Florida, Appellee.
Supreme Court of Florida.
May 18, 1960.
As Modified June 23, 1960.
*147 Virgil Q. Mayo, Blountstown, and Ernest W. Welch, of Isler, Welch & Jones, Panama City, for appellants.
Cornett & Leath, Panama City, for appellee.
John A. Madigan, Jr., of Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, for intervenor, Florida Sheriffs Ass'n.
Richard W. Ervin, Atty. Gen., Ralph M. McLane and Joseph V. Barrs, Asst. Attys. Gen., and Mallory E. Horne, of Horne & Rhodes, Tallahassee, amici curiae.
HOBSON, Justice.
The facts which give rise to the instant appeal may be summarized as follows:
By Chapter 57-368, the 1957 Legislature attempted to abolish the fee system method of compensation for county sheriffs by a general act establishing a comprehensive salary scale.[1] This law also established budget procedures and provided for the disposition of the fees and commissions collected by county sheriffs within its purview.
Pursuant to this statute the appellee, sheriff of Calhoun County, Florida, submitted a proposed budget for the fiscal year commencing on October 1, 1958, to the appellant, Board of County Commissioners. The appellant, although willing to continue paying the appellee in accordance with the old fee schedule, refused to honor the sheriff's salary requisition.
Shortly after this refusal, the appellant brought an action in the Circuit Court of Calhoun County, requesting a declaratory judgment as to the validity of Chapter 57-368. It is the appellant's contention that said statute violates Sections 20 and 21 of Article III of the Constitution of the State of Florida, F.S.A.
Upon completion of the arguments of the parties the Circuit Court found Chapter 57-368 constitutional. The chancellor held in part that this statute "established a reasonable classification of counties under the law, so as to justify not only differences in salary among the several sheriffs of the state, but also the exclusion of certain counties of the state from the operation of this act."
This cause is now before us on direct appeal, as a matter of right, from the circuit court's final judgment wherein that court directly passed upon the validity of Chapter 57-368, General Laws of 1957.[2]
The challenged act provides in pertinent part:
"Section 2. Salaries. 
"(1) On and after October 1, 1957, each sheriff shall receive for the performance of his official duties as sheriff an annual salary, which shall be due and payable on the first day of the month after the month in which it accrued; * * *

*148 "(2) The annual salary of each sheriff shall be fixed according to the population of the county according to the latest official decennial federal census of such county, as follows:

 "Population Salary (Counties)[3]
 0 -3445 $6,000 (Glades, Liberty, Flagler, Lafayette)
 3446-3490 7,500 (Okeechobee)
 3491-3900 6,000 (Gilchrist)
 3901-4000 7,500 (Dixie)
 4001-4500 6,000 (Charlotte)
 4501-5500 7,500 (Wakulla)
 5501-6200 7,500 (Franklin, Hendry, Citrus)
 6201-6400 8,000 (Baker)
 6401-7000 7,500 (Collier, Hernando)
 7001-7800 7,800 (Gulf)
 7801-10,414 7,500 (Martin, Calhoun, Union, DeSoto
 Hamilton, Hardee, Jefferson)
 10,415-11,000 9,000 (Taylor, Levy)
 11,001-12,000 7,500 (Sumter, Osceola, Bradford, Indian
 River, Washington)
 12,001-13,000 9,000 (Nassau)
 13,001-14,000 7,500 (Highlands, Holmes)
 14,001-14,300 8,500 (Madison  Break in population
 sequence omits Clay  14,323)
 14,701-17,500 7,500 (Walton, Suwannee)
 17,501-18,500 9,000 (Columbia)
 18,501-20,000 11,000 (Santa Rosa)
 20,001-20,500 7,500 (St. Lucie)
 20,501-23,000 8,500 (Pasco)
 23,001-23,500 8,500 (Lee)
 23,501-23,650 7,500 (Putnam)
 23,651-24,000 10,000 (Brevard)
 24,001-27,000 9,000 (St. Johns, Seminole)
 27,001-28,000 9,300 (Okaloosa)
 28,001-29,000 9,000 (Sarasota)
 29,001-33,000 10,000 (Monroe)
 33,001-36,400 9,000 (Jackson, Manatee, Lake)
 34,650-35,000 9,500 (Manatee  34,704. Break in
 population sequence)
 36,401-37,000 7,500 (Gadsden  36,457)
 37,001-42,000 8,500 (Marion)
 42,001-80,000 10,000 (Bay, Leon, Alachua, Volusia)
 80,001-100,000 10,500 (Broward)
 100,001-113,000 12,500 (Escambia)
 113,001-114,900 12,000 (Palm Beach)
 114,901-150,000 10,000 (Orange, Polk)
 150,001-250,000 10,500 (Pinellas, Hillsborough)
 250,001-400,000 12,000 (Duval)
 400,001-and up 15,000 (Dade)
 "When the salaries in this salary table are changed
 because of a change in the population of a county, the
 change in such salary shall become effective on and from
 the first day of the county's fiscal year occurring after the
 date as of which the census was taken. However, the
 annual salary of each sheriff shall not be less than the
 compensation earned by such officer or his predecessor in

*149
 office and payable to him in the year 1955, or the year
 1956, whichever is the higher amount, notwithstanding the
 amount set forth in the above salary table.
 * * * * * * * *
 "Section 9. The provisions of this act shall not apply
 to the sheriff of any county of the state having a constitutional
 amendment requiring the setting of salaries of
 all county officers and budget procedures for the conduct
 of the county offices of such counties, and the counties
 having a general budget procedure bill involving all fee
 officers in the counties. The provisions of this act shall (Polk, Dade
 not apply to any county of this state which has a population Hillsborough,
 in excess of 120,000 inhabitants according to the Duval)
 latest official decennial federal census, and which has a
 budget commission in such county. This act shall not apply
 to counties having a population of not less than
 36,401 nor more than 38,000 inhabitants, according to the (Gadsden)
 last Federal decennial census. This act shall not apply to
 any county which, according to the last official federal
 decennial census, had a population within the following
 brackets:
 "Not less than 3000 nor more than 3300 (Liberty)
 " " " 3400 " " " 3450 (Lafayette)
 " " " 4500 " " " 6000 (Franklin,
 Wakulla)
 " " " 6100 " " " 6300 (Citrus)
 " " " 8920 " " " 9100 (Hamilton)
 " " " 11,000 " " " 11,400 (Sumter)
 " " " 15,000 " " " 17,000 (Suwannee)
 " " " 150,000 " " " 240,000 (Pinellas)
 "Section 10. Provided that the provisions of this
 act shall not apply to counties having a population of not
 less than seventy thousand and not more than eighty (Volusia)
 thousand according to the last federal census. This act
 shall not apply to counties having a population of not less
 than 10,200 nor more than 10,414 inhabitants according (Jefferson)
 to the latest federal census, nor shall this act apply to
 counties having a population of not less than 17,500 nor
 more than 18,500 inhabitants. Providing that this act (Columbia)
 shall not apply to any county having a population of from
 14,000 to 14,300 according to the last official state-wide (Madison)
 census."[4]
Chapter 57-368 also contained a "saving clause", declaring it to be the intent of the legislature that should any portion of the act be declared unconstitutional the legislature would have, nonetheless, enacted the remaining valid portions without the inducement of such invalid portions.
We interrupt our examination of Chapter 57-368 to observe that we initially *150 had given consideration to the possibility that the issues of this case had been rendered "moot" by the 1959 enactment of Chapter 59-216[5] which repealed or drastically amended those subsections of Chapter 57-368 now under attack. Chapter 59-216 abolished the population-connected salary classifications, providing in lieu thereof that until otherwise fixed by the legislature, "the annual salary of each sheriff shall be equal to the compensation earned by such officer or his predecessor in office and payable to him in the year 1958."
It is apparent that Chapter 59-216 which applies to all sheriffs is not plagued with the defects inherent in the 1957 law. Therefore, although we cannot in this proceeding pass upon the validity of the 1959 act because it is not before us, said statute is unquestionably under established law presumed valid.
In view of the fact that the 1959 statute requires the appellee's salary be based upon the compensation he earned in 1958, our disposition of the challenge to the validity of the 1957 act will directly affect the calculation of the amount of salary the appellee earned in 1958, thus the issues raised herein by appellee Reeder are not moot.[6]
Appellant basically contends that Chapter 57-368 violates Article III, Sections 20 and 21, Florida Constitution, in that it is either a local or special act passed without compliance with the requirements of Section 21, or that it is a general law not of uniform and general operation throughout the state. We agree with appellant's latter contention.
Article III, Section 20, provides in pertinent part:
"The Legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers * * * regulating the fees of officers of the State and county."
Section 21 provides in part:
"In all cases enumerated in the preceding Section, all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that Section, the Legislature may pass special or local laws, except as now or hereafter otherwise provided in the Constitution; PROVIDED that no local or special bill shall be passed, * * * unless notice of intention to apply therefor shall have been published in the manner provided by law * * * at least thirty days prior to introduction into the Legislature of any such bill. * * * PROVIDED, however, no publication of any such law shall be required hereunder when such law contains a provision to the effect that the same shall not become operative or effective until ratified or approved at a referendum election to be called and held in the territory affected in accordance with a provision therefor contained in such bill, or provided by general law."
In view of the fact that neither the notice nor the referendum provisions of Section 21 were complied with and that this act was treated by the legislature throughout its entire consideration in both houses as a general law, this statute, if it is to stand, must do so as a "general law of uniform operation throughout the State."
*151 The organic commands of the constitution do not forbid the enactment of general laws containing reasonable classification as to population or otherwise.[7] A statute relating to subdivisions of the state or to subjects, persons or things of a class, based upon proper distinctions and differences that are inherent in or are peculiar or appropriate to a class is a general statute. The legislature has wide discretion in making such classifications; for this reason due deference is given to the legislative judgment and every presumption is indulged in favor of the validity of the legislative enactment in question.[8] When a classification made by the legislature is called in question, the one who assails such classification must carry the burden of showing the classification therein provided does not rest upon any reasonable basis but is arbitrary.[9]
As this court stated in Carter v. Norman et al.:[10]
"The classification of counties for governmental purposes according to population is entirely permissible in the enactment of a general statute, so long as the classification used is just and reasonable. State v. Daniel, 87 Fla. 270, 99 So. 804; State ex rel. Buford v. Smith, 88 Fla. 151, 101 So. 350. The arbitrary classification of counties by population for the purpose of avoiding the organic requirement of publication of notice of intention to apply to the legislature for the passage of proposed local or special law, however, is not permitted or sanctioned by the Constitution. Waybright v. Duval County, 142 Fla. 875, 196 So. 430."
And in Budget Commission of Pinellas County, et al. v. Blocker[11] we said:
"It is the rule in this jurisdiction that `where there is a substantial difference in population, and the classification on a population basis is reasonably related to the purposes to be effected, based on the differences in population which forms the basis thereof, and is not merely arbitrary, it is a general law, even though at the time it may be applicable to only one political subdivision of the State; but if the subject matter of the act and the public purpose to be effectuated thereby bear no reasonable relation to the difference in population upon which it rests, even though it be passed under the guise of a general law, it is in fact a local law; and if no notice has been published, and it contains no referendum clause, it is then a plain violation of Sections 20 and 21 of Article III of our Constitution and cannot be upheld.' Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638, 645; compare Manatee County v. Davidson, 132 Fla. 295, 181 So. 889; Sivort Co. v. State, 136 Fla. 179, 186 So. 671; Knight v. Bd. Pub. Instruction for Hillsborough County, 102 Fla. 922, 136 So. 631."
When we measure Chapter 57-368 by the standards above described the vice of constitutional invalidity is apparent from the very terms of the body of this act.
Subsection 2(2) which fixes the annual salary of the various sheriffs according to population contains three noticeable population discrepancies. The population classifications contain a break of 400 numbers between 14,300 and 14,701, which appears to exclude Clay County (14,323) from the operation of the act. The 29th classification of population (33,001-36,400) overlaps the 30th classification (34,650-35,000). This subsection also contains a break of *152 1,400 digits between 35,000 and 36,401, which would exclude Lake County but for the population overlap described above.
This same subsection also contains significant salary discrepancies, the most striking being that giving the sheriff of a county with a population of 18,501-20,000, $11,000 per annum, while the sheriffs of all counties covered by the act with populations between 20,001 and 100,000 receive various salaries which are substantially less than $11,000.
Further, sections 9 and 10 of the act have the effect of excluding approximately one-fourth of the counties of the state from its operation. Under these sections 18 of our 67 counties[12] were excluded by narrow population brackets so as to be equivalent of specifically naming said counties. Of the counties so excluded, six (Polk, Dade, Volusia, Duval, Hillsborough and Pinellas), are covered by other statutory enactments. The remaining twelve counties so exempted (Gadsden, Liberty, Franklin, Wakulla, Jefferson, Sumter, Madison, Hamilton, Suwannee, Citrus, Columbia and Lafayette) continued under the fee system. Moreover, under Chapter 57-368 as originally enacted it is quite clear that a growth in population moving a county into a higher population bracket would have had the ludicrous effect of reducing several sheriffs' salaries, rather than increasing them (i.e. see Santa Rosa, Okaloosa, Lee, etc.).
It is not permissible for the legislature to single out the officers of one or more counties and, under the guise of population, bless them with privileges or impose upon them conditions different in effect and operation than those imposed upon others similarly situated.[13]
Our perusal of this record and briefs of counsel, as well as the statute herein challenged, leads us to the conclusion that after every reasonable doubt is resolved in favor of the soundness or validity of the act, still there is no reasonable relationship between the object sought to be accomplished and the classifications used to obtain such objective.
Nor may this act be saved by operation of its "savings clause". From our examinations of the 1957 Journals of the Senate and House of Representatives it is clear that the provisos which render this statute invalid were conditions precedent to the ultimate approval of the bill which eventually became Chapter 57-368. The saving of this act would require judicial legislative draftsmanship far in excess of that which we may indulge even aided by the broad severability clause of the instant statute.
Finally, when we examine the act in the light of all that has been discussed herein, we must hold the hodge podge of classifications herein attempted bears no reasonable relationship to the differences in population upon which they purportedly rest. The statute is nothing more than a local law passed under the guise of a general act.[14]
It is apodictic that crime is more prevalent and the volume of civil litigation greater in the metropolitan areas of a given state than in those less populous.[15] Consequently an act which would give to sheriffs in the larger counties salaries above those granted to such officers in smaller counties could be upheld upon the theory that there is a reasonable relationship between the object to be accomplished and the more arduous duties to be performed. However, in the legislative action under discussion herein such pattern was not followed.
*153 For these reasons we must, therefore, reluctantly strike down Chapter 57-368, General Laws of 1957, because of its failure to conform to the requirements of either Section 20 or 21 of Article III of the Constitution. The foregoing determination being dispositive of this case, it is unnecessary for us to pass upon the other question raised by the appellants. Accordingly, the decree of the chancellor is hereby reversed and this cause is remanded for further proceedings not inconsistent with this decision.
It is so ordered.
THOMAS, C.J., and TERRELL, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] Sections 30.47-30.54, Florida Statutes 1957, F.S.A.
[2] Such appeals are authorized by Article V, § 4(2) of the Constitution of the State of Florida.
[3] Chapter 57-368 does not list the counties involved. However, for the convenience of the reader the counties which, according to the latest official decennial federal census, fall within the various population classifications, appear beside said population bracket.
[4] These sections appeared in the Florida Statutes as sections 30.48 and 30.54, F.S.A.
[5] Chapter 59-216 repealed Sections 30.47 (which described the legislative intent to abolish the fee system) and 30.54 (which exempted some 18 counties from the operation of Chapter 57-368). The 1959 act also amended § 30.49(3) to conform with the changes made in other subsections. However, the major modification to 57-368 (i.e., 30.47-30.54, F.S.A. 1957) was the amendment of 30.48(2) in such a fashion as to abolish the population-connected sheriff's salary schedule.
[6] See Dehoff v. Imeson, 1943, 153 Fla. 553, 15 So.2d 258.
[7] State ex rel. White v. Foley et al., 1938, 132 Fla. 595, 182 So. 195.
[8] Hunter et al. v. Flowers et ux., Fla. 1949, 43 So.2d 435, 14 A.L.R.2d 447.
[9] Anderson v. Board of Public Instruction for Hillsborough County, 1931, 102 Fla. 695, 136 So. 334, 338.
[10] Fla. 1948, 38 So.2d 30, 32.
[11] Fla. 1952, 60 So.2d 193, 195.
[12] Clay County, although apparently excluded by a break in the population brackets, is not included in the above calculation.
[13] State ex rel. Baker et al. v. Gray et al., 1938, 133 Fla. 23, 182 So. 620, 625.
[14] See Budget Commission of Pinellas County v. Blocker, Footnote 11, supra.
[15] See Lightfoot v. State, Fla. 1953, 64 So.2d 261, 263.