234 So.2d 103 (1970)
The STATE of Florida, and the Taxpayers, Property Owners and Citizens of the City of Miami Beach, Florida, Including Non-Residents Owning Property or Subject to Taxation Therein, Appellants,
v.
CITY OF MIAMI BEACH, a Municipal Corporation, Appellee.
No. 38652.
Supreme Court of Florida.
April 8, 1970.
*104 Gordon C. Oldham, Jr., Assigned State's Atty., and Charles A. Williams, Asst. State's Atty., for appellants.
Joseph A. Wanick, City Atty., and Phillip Goldman and Darrey A. Davis, of Scott, McCarthy, Steel, Hector & Davis, Miami, for appellee.
Thomas H. Anderson, Miami, as amicus curiae for Bal Harbour Village.
BALABAN, Circuit Judge.
This appeal is from a final judgment of the Circuit Court of Dade County validating City of Miami Beach Excise Tax Bonds in the principal amount of $12,000,000.00.
The resolution of the city council providing for the issuance of said bonds discloses that the purpose thereof is to improve and extend the Convention Hall by removal of existing parking areas, relocation and removal of various utilities, demolition of Girl Scout Building, construction of 150,000 square feet of new lobbies, meeting rooms, toilets, storage areas, corridors, and other service areas to serve both the new Convention Hall and the Old Hall, and the conversion of existing lobby to meeting rooms, new service facilities, pedestrian accessways from the proposed convention center parking structure to the new lobbies, replacement of the pedestrian bridges between the convention center and auditorium, and construction of a theatre of the performing arts.
The proposed bond issue is funded partly by a resort tax authorized by Ch. 67-930, Laws of Florida 1967,[1] a population act or a general act of local application.
The State contends that Ch. 67-930 is unconstitutional. The trial court held it constitutional.
Essentially, the contention of the State is that Ch. 67-930 is invalid, since (1) there is not a reasonable relationship between *105 the population classification and the subject matter of said act, and (2) the population classification is based on a particularly designated census and provides a termination date for the cities and towns in counties within the prescribed population brackets to qualify by charter amendment to come under said act.
If the State's position is sound, Ch. 67-930 is a local act and invalid, since it was passed without compliance with the notice requirements of the Constitution of 1885.
This Court, in a number of decisions, has discussed the rules by which the validity of population acts have been tested. Appropriate to the case sub judice, suffice it to say statutory classification based on population is permitted where reasonably related to the purposes to be effected and is grounded on a difference in population and not on mere arbitrary lines of demarcation. The organic demands of the Constitution of 1885 did not forbid the enactment of general laws containing reasonable classification as to population or otherwise.[2]
Ch. 67-930 authorizes the levy of an excise tax by municipalities in certain instances for promoting and advertising[3] the tourist industry of the metropolitan areas of this state. It is apparent from the official federal census of 1960, of which we take judicial notice, that Dade and Broward Counties are within the population brackets of Ch. 67-930. The same census discloses that other counties are potentially within the population brackets of said act.
In C.V. Floyd Fruit Co. v. Florida Citrus Commission, 1937, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562, this court upheld an excise tax imposed by the legislature on each standard-packed box of oranges, grapefruit and tangerines grown in this state. The tax was authorized particularly for the purpose of advertising and promoting in other states the citrus industry of Florida.
Quoting from an earlier opinion of our court in the case of Johnson v. State ex rel. Maxcy, 99 Fla. 1311, 128 So. 853, 857, this court in Floyd opined:
"`The protection of a large industry constituting one of the great sources of the state's wealth and therefore directly or indirectly affecting the welfare of so great a portion of the population of the state is affected to such an extent by public interest as to be within the police power of the sovereign.'"
Again in Floyd, this court quoted from Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121, 128, wherein this court said:
"`This court takes judicial notice of the fact that the citrus industry of Florida is one of its greatest assets. Its promotion and protection is of the greatest value to the state, and its advancement redounds greatly to the general welfare of the commonwealth.'"
We take judicial notice of the fact that the tourist industry of Florida likewise, is one of its greatest assets. We also recognize that the tourist industry is an important part of the industry of the larger metropolitan areas of this state.
In State v. City of Tampa, Fla. 1962, 146 So.2d 100, we held that the construction of *106 a convention center by the City of Tampa with public funds was a valid public purpose. In that case, we stated:
"This court has frequently approved the construction of an auditorium, stadium, warehouse, inter-American cultural and trade center and such other structures as an international trade mart as a proper public purpose. State v. City of Daytona Beach, 1948, 160 Fla. 131, 33 So.2d 218; State v. City of Miami, Fla. 1949, 43 So.2d 457; Starlight Corporation v. City of Miami Beach, Fla. 1954, 57 So.2d 6; State v. City of Miami, Fla. 1954, 72 So.2d 655; State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9, and State v. City of Miami, Fla. 1954, 76 So.2d 294."
The State further contends that the classification of the act as to the cities and towns which can qualify to collect a resort tax in the counties of the prescribed population brackets is so restrictive that the act on its face is a local act. The record shows that in addition to the City of Miami Beach, the Village of Bal Harbour has amended its charter in conformity to the provisions of Ch. 67-930 and has passed an ordinance authorizing collection of the resort tax.
When a classification made by the legislature is called in question, the one who assails such classification must carry the burden of showing the classification therein provided does not rest upon any reasonable basis but is arbitrary.[4]
The State has failed to show that other cities or towns, located in counties within or potentially within the prescribed population brackets, were not on the effective date of Ch. 67-930, or subsequent thereto, authorized to collect a resort tax. Thus, we cannot say that the classification as to cities and towns of the subject act is unreasonable. Moreover, said act is not limited to a particularly-designated census as was the act which was invalidated in Walker v. Pendarvis, Fla. 1961, 132 So.2d 186.
In light of the purpose of Ch. 67-930 and this state's interest in the promotion and further development of the tourist industry, we hold that the population classifications are reasonable and Ch. 67-930 is a valid general law.[5]
It is also further contended that the City of Miami Beach ordinance implementing Ch. 67-930 is not a validly enacted emergency ordinance and that the "bond" issue involved herein required approval in an election of the freeholders of the City of Miami Beach. These contentions are without merit.
In the instant case, the City found that an emergency existed. The implementing ordinance is presumptively valid, and the question of the existence of an emergency at the time of its passage rested in the judgment and discretion of the city council. Glackman v. City of Miami Beach, Fla. 1951, 51 So.2d 294. The record reveals no abuse in the manner in which said ordinance was adopted.
The "bond" issue does not impose a general obligation on the taxing power of the City of Miami Beach to service such bonds. State v. City of Miami, Fla. 1954, 76 So.2d 294.
Affirmed.
ERVIN, C.J., and ADKINS and BOYD, JJ., concur.
DREW, J., dissents with opinion.
DREW, Justice (dissenting).
The $12,000,000 of "Excise Tax Bonds, Issue of 1969," validated by the trial court *107 extend over a period of about twenty-four years. The Resolution authorizing the issuance of said bonds pledges to the payment thereof the income from (1) a "Utilities Service Tax," (2) Florida Power and Light, Southern Bell Telephone Company and Peoples Gas Company "Franchise Taxes," and (3) "Resort Taxes" levied in the city pursuant to Chapter 67-930, Laws of Florida, Acts of 1967. The effect of the affirmance of the trial court's Judgment of Validation will be to approve and validate and, so far as the holders of these bonds are concerned, to place beyond question for the life of these bonds the "Resort Taxes" which have been pledged to the payment thereof.
The ordinance levying the "Resort Taxes" was the subject of a direct attack some time after its initial passage. This litigation resulted in a decision of the trial court that "the excise tax of the City of Miami Beach provided for under ordinance No. 1619 represented a duplication interdicted by Chapter 212 Fla. Stat., F.S.A., and therefore was invalid." The trial court further noted in his decision "that subsequent to the filing of this suit an enabling act for such an excise tax by the City of Miami Beach had been passed (Ch. 67-930). * * * [T]he subsequent Act did not aid the prior ordinance but was a sufficient basis for denial of the plaintiff's request for permanent injunction against the levy of such an excise tax." This decision was reviewed by the District Court of Appeal and affirmed July 2, 1968.[1] After the rendition of this decision the City re-enacted the Ordinance[2] [subsequent to the effective date of Ch. 67-930, supra] and now argues that such subsequent re-enactment nullified the effect of the decision of the district court invalidating it. We come then to a simple proposition. The validity of the "Resort Taxes" Ordinance is to be determined by the validity of Chapter 67-930, Acts of 1967. If this Act is invalid the Ordinance is invalid and the tax levied pursuant thereto is unenforceable and has been unlawfully pledged to the payment of these bonds.
Chapter 67-930 purports to be a general act of local application. It is a population act granting cities and towns in all counties of the state having a population of not less than 330,000 and not more than 340,000 and in counties having a population of more than 900,000, according to the latest official decennial census, the right to impose a 2% excise tax known as a Municipal Resort Tax. A further classification of the act is that it shall only be applicable to those cities and towns whose charters specifically provide for now, or whose charter is subsequently amended prior to January 1, 1968, allowing the levy of the tax in question.
At the time Chapter 67-930 was enacted and thereafter to date there were only two counties in the state of Florida, Broward and Dade, that fell within the population formula contained in the act. The obvious purpose of the act itself is to allow only those cities and towns in Broward and Dade Counties, to the exclusion of all other cities and towns, to enact a Municipal Resort Tax for the purpose of promoting tourism.
There is no real, material or logical reason to allow cities and towns in counties having a population of between 330,000 and 340,000, together with cities and towns located in a county having a population of over 900,000, the exclusive right to enact a Municipal Resort Tax inasmuch as there is no set of facts that can reasonably be conceived that would sustain such a classification in regards to the subject matter of the enactment.
The classifications designated by the Legislature do not rest upon any reasonable basis and are essentially arbitrary, and *108 therefore not permissible.[3] I cannot conceive of a single valid reason that would lend any rationale to the narrow population requirements stated in the act. Instead, the narrow population limit of 330,000 to 340,000 contained in the act, taken together with a large exclusionary gap that exists in respect to counties not having a population of 900,000, patently demonstrates and exposes the Legislature's attempt to engage in illegal legislation designated to allow the cities and towns located in Dade and Broward Counties to enact a Municipal Resort Tax, all of which is in contravention of the requirements of Florida law.
Any legislative effort to classify by population, in a fashion which in effect closes the class on a basis of a particularly designated census, is unconstitutional unless passed in accordance with the requirements governing the passage of local laws. The act, from the date of its effect until January 1, 1968, only allows those cities and towns located in a county having the required population as of the last decennial census, to amend their charters allowing them to enact a Municipal Resort Tax.
The Legislature has effectively limited and closed the class of cities and towns that may enact a Municipal Resort Tax by setting a cut-off date of January 1, 1968, which is coupled directly to a particular decennial census, therefore violating the prohibition of closing the class on the basis of a particularly designated census.[4]
My views in dissent do not lead to a reversal of the final judgment of validation except insofar as it approves the validity of the "Resort Tax" Ordinance and the levies made and to be made pursuant thereto. The issuance of the bonds and the pledge of the other enumerated taxes to the payment thereof are authorized and I would affirm the judgment only to that extent.
NOTES
[1] Ch. 67-930 provides, in part:

"Section 1. All cities and towns, in counties of the state having a population of not less than three hundred thirty thousand (330,000) and not more than three hundred forty thousand (340,000) and in counties having a population of more than nine hundred thousand (900,000), according to the latest official decennial census, whose charter specifically provides now or whose charter is so amended prior to January 1, 1968, for the levy of the exact tax as herein set forth, are hereby given the right, power and authority by ordinance to impose, levy and collect a tax within their corporate limits, to be known as a municipal resort tax, upon the rent of every occupancy of a room or rooms in any hotel, motel, apartment house, rooming house, tourist or trailer camp, as the same are defined in part I, chapter 212, Florida Statutes, and upon the retail sale price of all items of food, beverages and alcoholic beverages, other than beer or malt beverages, sold at retail for consumption on the premises of any place of business required by law to be licensed by the state hotel and restaurant commission or by the state beverage department; provided, however, this tax shall not apply to those sales the amount of which is less than fifty cents (50¢)."
[2] Shelton v. Reeder, Fla. 1960, 121 So.2d 145; State ex rel. White v. Foley, et al., 1938, 132 Fla. 595, 182 So. 195.
[3] Ch. 67-930 provides, in part:

"Section 6. Any funds received under and by virtue of the municipal resort tax imposed or levied under the authority of this act shall be used for the following purposes only: creating and maintenance of convention and publicity bureaus, cultural and art centers, enhancement of tourism, publicity and advertising purposes, and for the future cost, purchase, building, designing, engineering, planning, repairing, reconditioning, altering, expanding, maintaining, servicing and otherwise operating auditoriums, community houses, convention halls, convention buildings or structures, and other related purposes, including relief from ad valorem taxes heretofore levied for such purposes."
[4] Shelton v. Reeder, Fla. 1960, 121 So.2d 145, 151; Anderson v. Bd. of Public Instruction for Hillsborough County, 1931, 102 Fla. 695, 136 So. 334, 338.
[5] State Farm Mutual Automobile Insurance Company v. Palm Springs General Hospital, Inc., Fla. 1970, 232 So.2d 737.
[1] Fried v. City of Miami Beach, 212 So.2d 308 (3rd Dist.Ct.App.Fla. 1968).
[2] The new Ordinance is number 1727 but is, in all material respects, the same as former Ordinance no. 1619.
[3] See Beasley v. Cahoon, 109 Fla. 106, 147 So. 288 (1933); State ex rel. Juvenal v. Neville, 123 Fla. 745, 167 So. 650 (1936); Waybright v. Duval County, 142 Fla. 875, 196 So. 430 (1940); Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334 (1931); Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638 (1946); Walker v. Pendarvis, 132 So.2d 186 (Fla. 1961); and State ex rel. Cotterill v. Bessenger, 133 So.2d 409 (Fla. 1961).
[4] See In Re Advisory Opinion to Governor, 132 So.2d 163 (Fla. 1961); and Walker v. Pendarvis, 132 So.2d 186 (Fla. 1961).