541 So.2d 1155 (1989)
DEPARTMENT OF BUSINESS REGULATION, Appellant,
v.
CLASSIC MILE, INC., Etc., et al., Appellees.
The GALAXY PROJECT, INC., Etc., Appellant,
v.
CLASSIC MILE, INC., Etc., et al., Appellees.
Nos. 73119, 73121.
Supreme Court of Florida.
April 6, 1989.
*1156 John C. Courtney, Deputy Gen. Counsel, Tallahassee, for Dept. of Business Regulation.
Douglas L. Stowell and Gary J. Anton of Stowell, Anton & Kraemer, Tallahassee, for Galaxy Project, Inc.
Frederick B. Karl, Thomas J. Maida and Michael G. Maida of Karl, McConnaughhay, Roland & Maida, P.A., Tallahassee, for appellees.
McDONALD, Justice.
The First District Court of Appeal declared unconstitutional the part of chapter 87-38, section 13, Laws of Florida, codified as section 550.355(2), Florida Statutes (1987).[1]Classic Mile, Inc. v. Department of Business Regulation, 536 So.2d 1048 (Fla. 1st DCA 1988). Review in this case is mandated by article V, section 3(b)(1), Florida Constitution, requiring this Court to *1157 hear appeals from decisions of the district courts of appeal invalidating state statutes.
The district court held the statute unconstitutional as a special law in the guise of a general law and found it had been enacted in violation of article III, section 10, Florida Constitution.[2] Further, the district court determined that the statute is fatally defective even as a general law under article III, section 11(b), Florida Constitution,[3] because it found no reasonable relationship between the express class characteristics enumerated in the statute and the purpose of the legislation. We agree with the district court on both points and affirm its decision.
Section 550.355(2) authorizes the receipt and display of simulcast thoroughbred horse races, and parimutuel wagering thereon, at licensed facilities. The statute gives the Department of Business Regulation, Division of Parimutuel Wagering, responsibility for licensure and regulation of such facilities. The statute provides criteria establishing a class of counties, from among all the counties of Florida, in which a facility may be licensed. All parties to this case agree that Marion County is the sole county that will ever fall within the statutorily designated class of counties eligible for licensure of a facility, due to the statute's requiring the existence of two unused quarter horse racing permits prior to January 1, 1987.
A law that operates universally throughout the state, uniformly upon subjects as they may exist throughout the state, or uniformly within a permissible classification is a general law. State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237 (Fla. 1934). We recognize that the legislature has wide discretion in establishing statutory classification schemes and that a law applying uniformly within a permissible classification is a general law. Shelton v. Reeder, 121 So.2d 145 (Fla. 1960). A statute relating to a subdivision of the state, based upon proper distinctions and differences that inhere in or are peculiar or appropriate to a class, is a general law. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983); Shelton. A statutory classification scheme must bear a reasonable relationship to the purpose of the statute in order for the statute to constitute a valid general law. Sanford-Orlando; West Flagler Kennel Club, Inc. v. Florida State Racing Commission, 153 So.2d 5 (Fla. 1963); Shelton. Statutes that employ arbitrary classification schemes are not valid as general laws. West Flagler; Shelton.
The constitution defines a special law as a special or local law. Art. X, § 12(g), Fla. Const. As explained in case law,
a special law is one relating to, or designed to operate upon, particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal; a local law is one relating to, or designed to operate only in, a specifically indicated part of the State, or one that purports to operate within classified territory when classification is not permissible or the classification is illegal.
State ex rel. Landis v. Harris, 120 Fla. 555, 562-63, 163 So. 237, 240 (1934) (citations omitted); State ex rel. Gray v. Stoutamire, 131 Fla. 698, 179 So. 730 (1938); State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804 (1924). See generally 10 Fla. Jur.2d Constitutional Law § 330 (1979). A special law is not converted into a general law by the legislature's treating it and passing it as a general law.
[E]ven though a bill is introduced and treated by the Legislature as a general law, if the bill in truth and in fact is *1158 clearly operative as a local or special act and the court can so determine from its obvious purpose or legal effect as gathered from its language or its context, this court will so regard it and deal with it as a local or special act in passing on its validity, regardless of the guise in which it may have been framed and regardless of whether the particular county or locality intended to be affected by it is in terms named or identified in the act or not.
Anderson v. Board of Public Instruction, 102 Fla. 695, 700, 136 So. 334, 337 (1931).
Section 550.355(2) is clearly a special law because it applies only to Marion County and there is no possibility that it will ever apply to any other county. See Anderson. A special law passed under the guise of a general law remains a special law. Article III, section 10, Florida Constitution, prohibits the enactment of any special law unless the legislature publishes notice of its intention to enact the law or unless the law is conditioned to become effective only upon a vote of the electors of the area affected. Because section 550.355(2) is a special law passed in contravention of the requirements of article III, section 10, we declare the statute unconstitutional.
Furthermore, because of the classification scheme employed by section 550.355(2) the statute cannot be valid as a general law. In Shelton this Court considered a statute which classified counties based upon population. The Court explained that population may serve as the basis for classifying counties and that a statute classifying counties on this basis is a valid general law if there is a reasonable relationship between the use of population to delineate the class and the purpose of the statute. However, if classifying counties on the basis of population is not reasonably related to the purpose of the statute, the statute is not a valid general law.
West Flagler, presented a statutory classification scheme involving parimutuel legislation with the statute at issue granting certain harness racing permit holders the right to transfer their permits to Broward County. The date of issue and subsequent use of a permit differentiated the class of permit holders eligible for permit transfers from the general class of all harness racing permit holders. This Court found the classification scheme not based upon material differences among harness racing permit holders. Instead, the factors used to establish the class were a descriptive technique used to identify only certain permit holders. Noting the appellees' failure to demonstrate a reasonable relationship between the factors used to establish the class and the primary purpose of the statute, the Court focused on the fact that the criteria used to designate the statutory class were incapable of generic application to the general class of all harness racing permit holders and therefore arbitrary.[4] Because the factors were merely a descriptive technique, and arbitrarily distinguished the statutory class from the general class of harness racing permit holders in a manner unrelated to the purpose of the statute, the Court invalidated the statute.
The statutory classification scheme employed by section 550.355(2) distinguishes among the counties of Florida on the basis of whether a county had been issued two quarter horse racing permits by January 1, 1987, neither of which had been used as of January 1, 1987, and only one jai-alai permit. As in West Flagler, appellants in this case make no attempt to demonstrate a reasonable relationship between the statutory classification scheme and the subject of the statute, and we find nothing in the record to support the existence of such a *1159 reasonable relationship.[5] In determining if a reasonable relationship exists "[t]he fact that matters is that the classification is potentially open to other tracks." Sanford-Orlando, 434 So.2d at 882.
A statute is invalid if "the descriptive technique is employed merely for identification rather than classification." West Flagler, 153 So.2d at 8. We agree with the appellees' argument that the statutory classification scheme employed by section 550.355(2) is nothing more than a descriptive technique used to identify Marion County. The classification scheme fails to distinguish among the counties of Florida in any meaningful way with respect to the subject of the statute and establishes a class open only to Marion County, now and in the future. Because the statutory classification scheme is wholly arbitrary, having no reasonable relationship to the subject of the statute, the statute is not a valid general law.
Appellants attempt to salvage section 550.355(2) as a general law by emphasizing the regulatory function conferred on the state by the statute. They contend that the regulatory responsibilities given to the state under the statute are part of the overall statewide regulatory scheme for the parimutuel industry, thereby rendering the statute a general law. Appellants seek to bolster their argument by stressing the statewide impact of revenue that might be generated by the statute and cite St. Johns River Water Management District v. Deseret Ranches, 421 So.2d 1067 (Fla. 1982); State v. Florida State Turnpike Authority, 80 So.2d 337 (Fla. 1955); Cantwell v. St. Petersburg Port Authority, 155 Fla. 651, 21 So.2d 139 (1945), as support for their position. In each of these cases this Court upheld as general laws statutes which, on their faces, appeared to affect only limited geographic areas of the state, and found that the primary purpose of the statutes contemplated important and necessary state functions and that the actual impact of the statutes far exceeded the limited geographic area identified by the terms of the statutes. (St. Johns, establishment of a water management subdistrict implicating the important and necessary state function of managing the water resources of Florida; Florida Turnpike, funding and construction of a turnpike spanning several Florida counties; Cantwell, construction of bridges and other transwaterway modes of travel on the Gulf Coast of Florida.)
As we have already said, the primary purpose of section 550.355(2) is the establishment of facilities for the receipt of simulcast horse races. It cannot be said that this is an important and necessary state function. Further, if under the statute a facility can operate only in Marion County, this statute does not have a broad impact on the state. The mere fact that revenue might be generated by a statute generally cannot provide the basis for finding statewide impact; to hold otherwise would require validation of all revenue-generating statutes as general laws.
Section 550.355(2) is in fact nothing more than a legislative attempt to grant to Marion County alone a monopolistic privilege, to the exclusion of all the remaining counties of Florida. We affirm the decision of the district court declaring section 550.355(2) unconstitutional.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] § 550.355(2), Fla. Stat. (1987), provides in pertinent part:

In any county in which there has been issued by the Division of Pari-mutuel Wagering of the Department of Business Regulation, as of January 1, 1987, two quarter horse racing permits, neither of which was utilized for racing prior to January 1, 1987, and only one jai alai permit, the Division of Pari-mutuel Wagering shall issue not more than one license in any qualifying county for the receipt and display of live thoroughbred horse races by simulcasting and for the acceptance of all legally authorized forms of pari-mutuel wagering on such races, which facility may not be located at the premises of any other pari-mutuel wagering permitholder licensed under this chapter and chapter 551.
[2] Art. III, § 10, Fla. Const., provides:

No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected.
[3] Art. III, § 11(b), Fla. Const., provides: "In the enactment of general laws on other subjects, political subdivisions or other governmental entities may be classified only on a basis reasonably related to the subject of the law."
[4] Subsequent decisions by this Court maintain the position that a statutory classification scheme incapable of generic application to members of a class, and fixed so as to preclude additional parties from satisfying the requirements for inclusion within the statutory classification at some future point in time, indicates an arbitrary classification scheme in the context of parimutuel legislation. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 882 (Fla. 1983); Biscayne Kennel Club, Inc. v. Florida State Racing Comm'n, 165 So.2d 762, 763 (Fla. 1964).
[5] Shelton v. Reeder, 121 So.2d 145 (Fla. 1960), and West Flagler Kennel Club, Inc. v. Florida State Racing Comm'n, 153 So.2d 5 (Fla. 1963), test a reasonable relationship between the statutory classification and the purpose of the statute. The First District Court of Appeal applied the test in these cases to the instant case. We note that art. III, § 11(b), Fla. Const., applies a different test requiring that a valid general law classify only in a manner reasonably related to the subject of the statute. This distinction in terminology does not affect our conclusion in this case.