Mr. Randy Ludacer County Attorney Monroe County 310 Fleming Street, Room 29 Key West, Florida 33040
Dear Mr. Ludacer:
You have asked for my opinion on the following question:
May a non-charter county, pursuant to an occupational license tax ordinance adopted under Ch. 205, F.S. require that an applicant have the zoning of his proposed business location checked for appropriateness by the county zoning authority as a precondition to the tax collector accepting the payment and issuing the license?
In sum:
Chapter 205, F.S., preempts to the state the regulation of local occupational license taxes and a county has no authority to establish by ordinance any system for the issuance or sale of licenses other than that provided therein.[1]
According to your letter, Monroe County provides, by ordinance, that no occupational license shall issue for any business unless the property where the business is located is properly zoned for such activity. The mechanism by which this provision is implemented is a form designed by the tax collector and property appraiser. This form contains a provision for the signature of the county planning and zoning director which certifies to the zoning appropriateness of the applicant's location. The ordinance further provides that no license shall be issued without this signature. The tax collector of Monroe County has recently questioned the appropriateness of this scheme.
You state that Monroe County's occupational license was enacted pursuant to Ch. 205, F.S., which authorizes the governing body of county to levy, by ordinance, a license tax for the privilege of engaging in or managing any business, profession or occupation.
Initially, I would note that duly enacted ordinances are valid and binding until a court determines otherwise.[2] This office must presume the validity of any duly enacted Monroe County ordinance; therefore, my comments will be of a general nature.
It is the Legislature which possesses the inherent power to impose taxes upon professions, trades, occupations, businesses and privileges. The power is limited only by State or Federal constitutional restrictions.[3] Thus, as a general rule, the power to levy excise, occupational or other taxes which are in the nature of license of privilege taxes may be exercised on any business, profession or occupation.[4] However, a county, like other units of local government, has no inherent power to impose taxes; the taxing power for units of local government must be derived from the state.[5]
Section 1(a), Art. VII, State Const., provides in part that "[n]o tax shall be levied except in pursuance of law . . . . All other forms of taxation shall be preempted to the state except as provided by general law." In addition, s. 9, of Art. VII, states that counties shall be authorized by general law to levy other taxes for county purposes with certain exceptions.
The "Local Occupational License Tax Act,"[6] Ch. 205, F.S., authorizes the governing body of a county to levy "an occupational license tax for the privilege of engaging in or managing any business, profession or occupation within its jurisdiction."[7]
Certain conditions are imposed on the authority of a county governing body to levy an occupational tax, such as a requirement that the tax shall be based upon reasonable classification and shall be uniform throughout any class.[8] The statute also requires that licenses shall be issued for no more than one year and that all licenses shall expire annually on October 1.[9]
Florida counties have been granted broad home rule powers by s. 1(f), Art. VIII, State Const., as implemented by s. 125.01, F.S., as construed by the Supreme Court of Florida in Speer v. Olson.[10] However, the governing body of a non-charter county does not derive any home rule power from s. 1(f) of Art. VIII, State Const., and s. 125.01, F.S., to regulate the issuance or sale of occupational licenses or the collection of such taxes. Rather, the levying and collection of occupational license taxes (or the issuance or sale of occupational licenses and the collection of license taxes) are matters which are the exclusive prerogative of the Legislature pursuant to ss. 1(a) and 9(a), Art. VII, State Const., as implemented by Ch. 205, F.S.
No alternative method or procedure for the issuance or sale of occupational licenses by a county is contemplated by the "Local Occupational License Tax Act."[11] It is the rule that when the controlling law directs how a thing shall be done, that is, in effect, a prohibition against its being done in any other way.[12]
Section 205.053(1), F.S., is the governing general law on this subject and a county has no authority to establish by ordinance any system for the issuance or sale of licenses which is in conflict therewith.[13] However, this conclusion should not be understood to restrict a county's authority to regulate the zoning appropriateness of businesses by other means.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] In the memorandum of law which you have submitted with your request you cite Miami Herald Publishing Co. v. City of Hallandale, 734 F.2d 666 (11 Cir. 1984), reversed in part on other grounds, 742 F.2d 590 (11 Cir. 1984), for the proposition that there are regulatory provisions which may be imposed by local ordinance and that these are not per se violative of Ch. 205, F.S. In fact, the court specifically stated that "[t]he question of whether enabling authority exists for the ordinance is not before this court." See, Miami Herald Publishing Co., supra at 671, footnote 3.
[2] See, State v. Ehinger, 46 So.2d 601 (Fla. 1950); State
v. City of Miami Beach, 234 So.2d 103 (Fla. 1970).
[3] See, e.g., Amos v. Mathews, 126 So. 308, 315 (Fla. 1930), AGO's 84-91 and 84-65. And see generally, 53 C.J.S. Licenses s. 9.a.
[4] See, Amos v. Gunn, 94 So. 615, 640 (Fla. 1922) and 53 C.J.S. Licenses s. 7.
[5] Contractors and Builders Association of Pinellas County v. City of Dunedin, 329 So.2d 314, 317 (Fla. 1976), petition for cert. denied, 444 U.S. 867 (1979); Belcher Oil Company v. Dade County, 271 So.2d 118, 122 (Fla. 1972). See generally, 53 C.J.S. Licenses s. 9.
[6] The act is so designated by s. 205.013, F.S.
[7] Section 205.032, F.S.
[8] Section 205.033(1)(a), F.S.
[9] Section 205.033(1)(c), F.S.
[10] 367 So.2d 207, 211 (Fla. 1978).
[11] See, AGO 84-65 (As Ch. 205, F.S., sets forth the exclusive procedure for the issuance or sale of occupational licenses and the collection of occupational license taxes, a county may not establish any method for selling such licenses or collecting such taxes which is in conflict therewith, and that pursuant to s.205.053[1], F.S., the county tax collector is the "appropriate tax collector" to sell county occupational licenses); AGO 84-91 (The power conferred and the duty imposed on the county tax collector by s. 205.053, F.S., to issue or sell county occupational licenses or to collect the county occupational license tax and to apportion and distribute the revenues derived therefrom as directed by s.205.033, F.S., may not be transferred by ordinance from the tax collector to the local government code enforcement board).
[12] See, Alsop v. Pierce, 19 So.2d 799, 806 (Fla. 1944); cf., White v. Crandon, 156 So.2d 303 (Fla. 1934).
[13] See, s. 125.01(1), F.S.; cf., Speer v. Olson, 367 So.2d 207
(Fla. 1978); City of Miami Beach v. Rocio Corporation,404 So.2d 1066 (3 D.C.A. Fla., 1981), petition for review denied,408 So.2d 1092 (Fla. 1981); Campbell v. Monroe County, 426 So.2d 1158 (3 D.C.A. Fla., 1983); AGO 84-65.