702 So.2d 1253 (1997)
ALACHUA COUNTY, Florida, etc., et al., Appellants,
v.
Dwight ADAMS, etc., Appellee.
No. 88844.
Supreme Court of Florida.
December 4, 1997.
Robert L. Nabors, Harry F. Chiles and Virginia Saunders Delegal of Nabors Giblin & Nickerson, P.A., Tallahassee; and Mary A. Marshall and Marion J. Radson, Gainesville, for Appellants.
Joseph W. Little, Gainesville, for Appellee.
Mark H. Scruby, County Attorney, Green Cove Springs, for Clay County, Amicus Curiae.
GRIMES, Senior Justice.
This is an appeal from a decision of the First District Court of Appeal holding chapter 94-487, Laws of Florida, to be an unconstitutional special act. Alachua County v. Adams, 677 So.2d 396 (Fla. 1st DCA 1996). We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
There are two provisions of the Florida Constitution relevant to the determination of this case.
SECTION 1. Taxation; appropriations; state expenses; state revenue limitation.
(a) No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the state except as provided by general law.

Art. VII, § 1(a), Fla. Const. (emphasis added).
SECTION 9. Local taxes.
(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution.
Art. VII, § 9(a), Fla. Const. (emphasis added).
As authorized by these constitutional provisions, the legislature has enacted the following general law:
212.055 Discretionary sales surtaxes; legislative intent; authorization and use of proceeds.
....
(2) LOCAL GOVERNMENT INFRASTRUCTURE SURTAX.
(a)1. The governing authority in each county may levy a discretionary sales surtax of 0.5 percent or 1 percent....
....

*1254 (d)1. The proceeds of the surtax authorized by this subjection ... shall be expended... to finance, plan, and construct infrastructure.... Neither the proceeds nor any interest accrued thereto shall be used for operational expenses of any infrastructure....
2. For the purposes of this paragraph, "infrastructure" means:
a. Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of public facilities which have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto.
§ 212.055, Fla. Stat. (1995) (emphasis added).
However, in 1994 the legislature enacted chapter 94-487, Laws of Florida. This special law, applicable only to Alachua County, stated in pertinent part:
Section 1. In addition to the uses authorized by s. 212.055(2), Florida Statutes, the board of county commissioners of Alachua County and the municipalities of Alachua County may use local government infrastructure surtax revenues for operation and maintenance of parks and recreation programs and facilities established with the proceeds of the surtax.

Ch. 94-487, Laws of Fla. (emphasis added).
Thereafter, Alachua County and all of the municipalities within the county entered into an interlocal agreement specifying that the surtax proceeds be used to operate and maintain a county-wide recreational program. Dwight Adams, a citizen and taxpayer of the county, disputed the constitutionality of chapter 94-487 and threatened legal action to enjoin the pending referendum on the surtax. Consequently, Alachua County and the City of Gainesville filed a declaratory judgment action, seeking a declaration of the legality of the surtax and the interlocal agreement. The trial judge held that chapter 94-487, Laws of Florida, was an unlawful special act which purported to amend the county's power to levy the local government infrastructure surtax in violation of article VII, section 1(a) of the Florida Constitution. This judgment was affirmed by the First District Court of Appeal. Adams, 677 So.2d 396.
Appellants point out that article VII, section 1(a), by its express language, relates only to the "forms of taxation." They suggest that the "form" of the tax authorized by section 212.055 is a sales tax, whereas the special act relates only to the purposes for which the revenues may be spent. Thus, they posit that while the county's authorization to impose a surtax must be based on general law, the uses for which the proceeds may be expended can be changed by special law.
To this argument, the court below stated:
Appellants' distinction between taxing and spending in this case is unpersuasive and largely semantic. As the Florida Supreme Court recently held in a different context, "the power of a municipality to tax should not be broadened by semantics...." State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994).
Adams, 677 So.2d at 398. We agree.
The "form of taxation" rationale misconstrues article VII, section (1)(a). The overriding purpose of this article is to make a constitutional division of tax revenues between those available for state uses and those reserved for local government. The phrase "all other forms of taxation" obviously refers to any tax other than those previously designated ad valorem taxes on real property and tangible personal property. This provision is designed to prevent the legislature from undermining non-ad valorem tax sources needed to support state government by the enactment of special laws authorizing local governments to impose non-ad valorem taxes for local purposes.
Moreover, appellants ignore article VII, section (9)(a), which does not contain the phrase "all other forms of taxation." This provision permits the legislature to authorize counties to levy non-ad valorem taxes, of whatever form or description, but only by general law. A determination that a special law may allow a county to redirect the tax proceeds in a manner explicitly contrary to the general law which authorized the tax in the first place would clearly undercut the purpose of article VII, section 9(a).
*1255 Appellants' reliance upon Rowe v. Pinellas Sports Authority, 461 So.2d 72 (Fla.1984), is misplaced. Significantly, neither section (1)(a) nor section (9)(a) of article VII of the constitution was ever mentioned in that opinion. Further, there was no argument that the tax revenues could not be pledged to pay off the bonds which would raise the money to be used to build a stadium. Rather, the point discussed was whether a special act could properly authorize these bonds to be issued by the Pinellas County Sports Authority rather than the county itself. The special act simply changed the manner in which the money would be borrowed. The tax authorized by the general law was not altered because the tax revenues were still to be used for the purpose of allowing the stadium to be built. The cases of Wilson v. Hillsborough County Aviation Authority, 138 So.2d 65 (Fla.1962), and Kirkland v. Phillips, 106 So.2d 909 (Fla.1958), do not bear on the issue before us because they were decided prior to 1968 when the pertinent constitutional provisions were different from those in our present constitution.
Section 212.055(2) is a general law that authorizes counties to levy an infrastructure tax under precisely defined conditions. These conditions prescribe the rates of taxes, the uses for the revenue raised by the taxes, and the procedure to be followed for approving the taxes. To permit chapter 94-487 to stand would convert subsection 212.055(2) into a general grant of sales tax authority to counties, subject only to the enactment of special law. If Alachua County can be authorized to levy the sales tax surcharge to fund operations and maintenance of facilities, then some other county can be authorized by special law to fund general governmental operations. This is the exact consequence that sections (1)(a) and (9)(a) of article VII of the Florida Constitution were intended to prevent.
Chapter 94-487, which is a special act relating only to Alachua County, purports to amend section 212.055(2), a general taxing statute, to levy the surtax for uses that are not only not permitted to any other county but are also positively prohibited to all counties. In the face of the unambiguous restrictions imposed by article VII, section 1(a) and article VII, section 9(a) of the Florida Constitution, we declare chapter 94-487 to be unconstitutional.
We affirm the decision of the court below.
It is so ordered.
KOGAN, C.J., and SHAW, HARDING and WELLS, JJ., concur.
OVERTON, J., dissents with an opinion, in which ANSTEAD, J., concurs.
OVERTON, Justice, dissenting.
The majority, through its construction of our constitution, has restricted the ability of citizens of local governmental entities to vote to impose an authorized tax upon themselves and to use the tax revenue for purposes specifically identified by special law. The majority opinion not only restricts the power of the people to provide wanted services for themselves, but also restricts the power of the legislature to provide the people with a means to have the desired local governmental services. This majority opinion is directly contrary to prior decisions of this Court that allowed special laws to be used in the manner desired by Alachua County in this instance. The majority summarily dismisses those cases by saying they were decided before the 1968 constitution was adopted. Interestingly, the majority's interpretation of the 1968 constitution makes its provisions more restrictive of local governments' authority than the 1885 constitution when, in fact, the philosophy of the 1968 constitution was to "broaden" local governments' control of the tax structure.
The issue in this case is whether our present constitution prohibits the legislature from expanding or contracting by special law the class of permitted uses for the proceeds of a discretionary sales surtax set out by general law. Article VII, section 1(a), of the Florida Constitution plainly states that only the "form of taxation" must be authorized by general law. Article VII, section 9, states that counties may be authorized by general law to levy various forms of taxes. Pursuant to these provisions, the legislature enacted section 212.055(2), Florida Statutes (1995), authorizing the levy of a sales surtax. The statute also sets forth how the tax revenue must be used. The special law in issue set *1256 forth in chapter 94-487, Laws of Florida, simply expanded the permitted uses of the sales surtax revenues in Alachua County. Consistent with our prior decisions, this special law does not violate the Florida Constitution. In my view, the decision of the majority is contrary to the mandate of this Court to "interpret statutes in such a manner as to uphold their constitutionality." Capital City Country Club, Inc. v. Tucker, 613 So.2d 448, 452 (Fla.1993).
The majority has ignored another constitutional provision that is directly applicable in this case. It deals directly with prohibited special laws. Article III, section 11(a)(2) provides:
SECTION 11. Prohibited special laws.
(a) There shall be no special law or general law of local application pertaining to:
....
(2) assessment or collection of taxes for state or county purposes, including extension of time therefor, relief of tax officers from due performance of their duties, and relief of their sureties from liability.
Our prior decisions interpreting the predecessor of this provision made it clear that a permitted use of tax revenues was different from the authorization to impose the tax.[1] In Wilson v. Hillsborough County Aviation Authority, 138 So.2d 65, 67 (Fla.1962), we said that there was a distinction between the "form of taxation" and the purpose to which the revenue could be used and allocated. We wrote:
The provision of Section 20, Article III, Florida Constitution, proscribing local laws for the "assessment and collection of taxes" for county purposes was designed merely to provide uniformity in the assessment and collection process. It has never been construed to prohibit local laws which authorize a particular tax for a particular local county purpose.
Similarly, in Kirkland v. Phillips, 106 So.2d 909, 913 (Fla.1958), we stated:
It is true that by Section 550.16, Florida Statutes, the Legislature has by general law made provision for the distribution of the so-called additional race track tax monies. The fact that the Legislature has made this provision by general law would offer no constitutional impediment to a legislative provision by special or local law allocating the use of these funds for a special county purpose in a particular county.

(Emphasis added.)
The majority states that these cases are inapplicable to the issue presented because they were decided prior to the 1968 revision of the Florida Constitution. However, I can find nothing under article VII or article III, section 11, of the 1968 constitution that alters the legislature's ability to enact special laws expanding or contracting the class of permitted uses for which the proceeds of properly authorized local taxes may be utilized. The authors of the 1968 constitution knew of this Court's interpretation regarding this particular use of special laws and chose not to alter it by constitutional amendment. Only the construction by judicial fiat that the majority now places on the language of article VII alters this particular use of special laws by the legislature.
We also decided a case under the 1968 constitution in which we found valid a special *1257 law that expanded the means of funding local government projects. In Rowe v. Pinellas Sports Authority, 461 So.2d 72, 74 (Fla.1984), we confronted the following factual circumstances:
In 1977 the Florida legislature enacted what is now section 125.0104, Florida Statutes (1983), the "Local Option Tourist Development Act." This statute authorizes Florida's counties, after referendum to levy a tourist development tax, to be used for certain enumerated purposes.
Pursuant to its statutory authorization, in 1978 Pinellas County, after a referendum, adopted ordinance 78-20. Section 2 of that ordinance set forth the "tourist development plan" whereby all receipts from the tax were to be placed in a trust fund "to be used exclusively for tourist advertising and promotion for Pinellas County and its committees." Section 3 of the ordinance, not a part of the tourist development plan, provided that all or any portion of the tax revenues might be pledged by the Board of County Commissioners to secure revenue bonds issued for certain projects, including "convention centers, sports arenas, sports stadiums, coliseums, or auditoriums."
In 1982 ordinance 82-19 was enacted which amended ordinance 78-20. The amended ordinance expanded the tourist development plan (section 2) of the first ordinance to include purposes other than "tourist advertising and promotion," specifically, the construction of sports stadiums.
In November 1983 the Board of County Commissioners adopted a resolution authorizing the Pinellas Sports Authority to proceed with development of a bond issue to finance the stadium.
The general law authorizing the imposition of the tourist development tax restricted the use of the revenue in the following way:
(5) AUTHORIZED USES OF REVENUE.
....
(b) In any county in which the electors of the county or the electors of the subcounty special tax district have approved by referendum the ordinance levying and imposing the tourist development tax, the revenues to be derived from the tourist development tax may be pledged to secure and liquidate revenue bonds issued by the county for the purposes set forth in subparagraph (a)1.
§ 125.0104, Fla. Stat. (1983)(emphasis added). The general law in that case did not authorize the pledging of tourist tax revenues to secure bonds issued by a sports authority. Instead, that general law only allowed the revenues derived from the tourist development tax to be pledged to secure bonds issued by the county. The charter of the Pinellas Sports Authority, however, was enacted as a special law. Ch. 77-635, § 8(c), Laws of Fla. The charter of the sports authority allowed the county to pledge tourist tax revenues to secure sports authority bonds. Therefore, the special law enlarged the class of permitted uses of tourist tax revenues beyond that authorized by general law. In upholding that special law against constitutional attack, we stated:
Appellants also contend that Pinellas County's tourist development tax revenues may not be pledged to pay off bonds that have been issued by another governmental entity, in this case, the [Pinellas Sports Authority].
However, section 8(c) of the [Pinellas Sports Authority] charter, chapter 77-635, Laws of Florida, provides that the county is authorized
to enter into cooperative agreements with the authority non ad valorem moneys of county ... to the payment of ... debt service costs ... or any part thereof of the authority while bonds issued by the authority.
The [Pinellas Sports Authority] charter empowers the county to pledge non-ad valorem moneys of the county, including tourist development tax revenues, to the payment of obligations issued by the Pinellas Sports Authority.
When a special act (such as the [Pinellas Sports Authority] charter) and a general law conflict, the special act will prevail. State ex rel. Johnson v. Vizzini, 227 So.2d 205 (Fla.1969). Because section 8(c) of the [Pinellas Sports Authority] charter was enacted by subsequent special act, the authority for the pledging of tourist development *1258 tax revenues by the county to secure obligations issued by the [Pinellas Sports Authority] controls over any limitation imposed upon such a pledge by section 125.0104(5), Florida Statutes (1983).
Rowe, 461 So.2d at 77. In my view, it is clear by the Rowe decision that this Court has not read the article VII limitations in the 1968 constitution to preclude the type of special law that expanded the means of allocating and using revenue from a tax authorized by general law.
The majority's interpretation of the 1968 constitution makes its provisions more restrictive of local governmental control of the tax structure than the provisions under the 1885 constitution. In fact, the philosophy of the 1968 constitution was to give local governments more control, not less. For example, an analysis by the Legislative Reference Bureau of the 1968 constitutional revisions explains that article VII, section 9, governing local taxes, was intentionally "broadened" from its form under the 1885 constitution.
In conclusion, the majority finds that the provisions of article VII now require that both the tax itself and the use of the tax revenues be authorized by general law. As explained above, this is contrary to prior decisions of this Court that separate the form of taxation from the allocation of the revenue. To be intellectually correct, the majority should merely state that it is overruling these prior decisions.
The people in local governmental entities lose by this decision, and the Constitution Revision Commission should develop a means for the people in a particular geographical area to enact a tax upon themselves for specific uses applicable to their community.
ANSTEAD, J., concurs.
NOTES
[1] The predecessor to article III, section 11(a), is article III, section 20, Florida Constitution of 1885. The drafters of the 1968 constitution chose not to change the language or substance of article III, section 20. That section read:

Section 20 The Legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, or for the punishment of crime or misdemeanor; regulating the practice of courts of justice, except municipal courts; providing for changing venue of civil and criminal cases; granting divorces; changing the names of persons; vacating roads; summoning and empaneling grand and petit juries, and providing for their compensation; for assessment and collection of taxes for State and county purposes; for opening and conducting elections for State and county officers, and for designating the places of voting; for the sale of real estate belonging to minors, estates of decedents, and of persons laboring under legal disabilities; regulating the fees of officers of the State and county; giving effect to informal or invalid deeds or wills; legitimizing children; providing for the adoption of children; relieving minors from legal disabilities; and for the establishment of ferries.
(Emphasis added.)