VAN NORTWICK, J.
Humana Medical Plan, Inc. (Humana), appeals a summary final judgment ruling that section 409.9122(13), Florida Statutes (2003)(the Act), which mandates that the Florida Agency for Health Care Administration (AHCA), appellee, make adjustments of enrollee assignments for Medicaid managed prepaid plans operating in Miami-Dade County, was a general law, not a special or local law subject to the notice requirements of Article III, section 10 of the Florida Constitution. We agree with the trial court that, although the Act facially appears to affect only a limited geographic area, the Act has a primary purpose of improving the statewide Medicaid service delivery system and, thus, is a valid general law. Accordingly, we affirm the summary final judgment.

Background

The Medicaid program is jointly funded by the state and federal governments in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396, et. seq. AHCA is designated as the Florida state agency authorized to make payments to qualified providers for medical assistance and related services on behalf of eligible individuals. See § 409.902-905, Fla. Stat. (2003). In the case before us, it is undisputed that adequate funding for the Medicaid program is a major budgeting issue for the State of Florida which impacts the Medicaid population in all geographic areas of the state and that excessive Medicaid expenditures or the loss of a quality managed care provider in one geographic area of the state can have adverse consequences for the statewide Florida Medicaid program. Further, Miami-Dade County is not only the most populous county in Florida, in the 2002/2003 fiscal year, Miami-Dade County had the largest Medicaid-eligible population, in excess of 420,-000, and possessed a higher Medicaid capitation rate than elsewhere in the South Florida area. Because of the size of the eligible Medicaid population in Miami-Dade County, any disruption of Medicaid services in the Miami-Dade County area which would result from the loss or potential loss of a provider could have an adverse impact on the efficient and effective statewide administration of the Medicaid program. Finally, requiring assignments of Medicaid enrollees in Miami-Dade County to smaller managed care plans will work to ensure that such plans will have a sufficient number of Medicaid enrollees to reduce their cost of providing services through economies of scale.
The budgeting impact of Florida’s Medicaid program has been of concern to the Florida Legislature. In 1993, the legislature made specific findings concerning the state’s Medicaid program:
The Legislature hereby finds that the Medicaid program has experienced an annual growth rate of approximately 28 percent per year for the past 5 years, and is consuming more than half of all new general revenue growth. The present Medicaid system must be reoriented *1042 to emphasize, to the maximum extent possible, the delivery of health care through entities and mechanisms which are designed to contain costs, to emphasize preventive and primary care, and to promote access and continuity of care.
Ch. 93-129, § 50 at 707, Laws of Fla., codified in § 409.9121, Fla. Stat. (2003). Thus, in an attempt to contain the increasing Medicaid costs, the legislature required Medicaid recipients to be enrolled in a managed care program. Id. Under subsections 409.9122(2)(e) and (f), Florida Statutes (2003), Medicaid recipients are allowed to choose a managed care plan; but, when a recipient does not choose a managed care plan within a designated time period, AHCA assigns the recipient to a managed care plan servicing the recipient’s area.
Prior to the enactment of section 409.9122(13) in 2003, AHCA was required to assign recipients among managed care plans in a manner which maintained an enrollment in MediPass and managed care plans in a 40 percent and 60 percent proportion, respectively. See § 409.9122(2)(f), Fla. Stat. (2003). The Act provides:
Effective July 1, 2003, the agency shall adjust the enrollee assignment of Medicaid managed prepaid plans for those Medicaid managed prepaid plans operating in Miami-Dade County which have executed a contract with the agency for a minimum of 8 consecutive years in order for the Medicaid managed prepaid plan to maintain a minimum enrollment level of 15,000 members per month.
§ 409.9122(13), Fla. Stat. (2003).
As a result, rather than using the rotating assignment system applicable throughout Florida, pursuant to the Act, in Miami-Dade County AHCA assigns enrollees to managed care plans which have executed a contract with AHCA for at least eight consecutive years and which have not achieved a minimum enrollment of 15,000 Medicaid enrollees. The record reflects that four managed care plans fall within the qualifications of the statute: Preferred Medical Plan, Inc. (PMPI), Vista Health-plan of South Florida, Inc. (Vista), Jackson Memorial Healthplan (Jackson), and Limited Health Plan (Limited). PMPI and Vista appeared below and appear here as intervenors.
Prior to the adoption of the Act, Huma-na received a significant proportion of its Medicaid-eligible recipients through the automatic assignment process pursuant to section 409.9122(2)(f). Subsequent to the effective date, of the Act, Humana was notified by AHCA that it would not receive any Medicaid assignments pursuant to the Act until PMPI, Vista, Jackson and United each have obtained 15,000 Medicaid enroll-ees. As a result, Humana has suffered a significant adverse impact from the loss of enrollees.

Constitutional Constraints

Article III, section 10 of the Florida Constitution prohibits the enactment of any local or special law, unless the legislature publishes notice of its intent to enact the law, or the law is conditioned to become effective only upon a vote of the electors of the area affected. Article III, section 10 provides:
No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except a provision for referendum, is ■conditioned to become effective only upon approval by vote of the electors of the area affected.
The constitution defines “special law” to mean a special or local law. Art. X, § 12(g), Fla. Const. Thus, the requirements of Article III, section 10 of the Florida Constitution apply to both “special laws” and “local laws.” Sections 11.02, *1043 11.021 and 11.03(2), Florida Statutes (2003), set forth the notice requirements applicable to special or local acts. It is undisputed that no attempt was made to comply with these notice requirements with respect to the Act.

The Order on Appeal

Humana filed a four count complaint against AHCA seeking injunctive relief in which it alleged, among other things, that the Act was a local law enacted without compliance with the notice requirements of Article III, section 10, and was, thus, unconstitutional. After the filing of counter-motions for summary judgment, and a hearing thereon, the trial court entered a summary final judgment which provides, in pertinent part, as follows:
There are no genuine issues of material fact remaining to be resolved regarding the constitutional validity of section 409.9122(13), Florida Statutes (2003) ... and the parties stipulated at the hearing that all of the Counts are ripe for summary judgment.
* * *
Medicaid is a statewide program administered by AHCA and funded by a combination of State of Florida and federal tax dollars. The Medicaid program is not a regulatory program; it provides certain types of public benefits to those in need, and the program is administered at the State level. The Court recognizes that Medicaid is an important budgetary concern of the State, and that the program is one of the largest it administers. Effective administration of the Medicaid program clearly requires a sufficient number of established and financially viable providers to ensure continuity and quality of care. Miami-Dade County is Florida’s most populous county and it is undisputed that it has a large Medicaid population. The Legislature’s determination that Miami-Dade County needs an efficient and effective Medicaid service-delivery system is certainly reasonable, and the precise manner in which Medicaid services are delivered to Miami-Dade’s citizens is for the Legislature to decide. Whether the Legislature’s distinct treatment accorded Miami-Dade County constitutes a local law is therefore the heart of the issue.
[T]he Court finds that the [Act] is not a special or local law. Section 409.9122(13), Florida Statutes, addresses a matter of significant state interest, and ultimately relates to the important state function of administering Florida’s Medicaid program. It is a valid general law and as such is not subject to the Constitutional notice requirements applicable to special laws. Therefore, AHCA’s and Intervenors’ Amended Motion for Summary Judgment as to Count I is GRANTED and [Humana’s] Motion for Summary Judgment as to Count I is DENIED.

Analysis

We begin our analysis by noting that the Act comes to this court clothed with the presumption of constitutionality. Dep’t of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 881 (Fla.1983). Our review of whether section 409.9122(13) is a constitutional general law is de novo. City of Miami v. McGrath, 824 So.2d 143, 146 (Fla.2002). When the legislature makes a classification of counties or designates a political subdivision in the enactment of a general law for governmental purposes, “if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.” See Anderson v. Bd. of Pub. Instruction for Hillsborough County, 102 Fla. 695, 136 So. 334, 338 (1931)(quoting Hiers v. Mitchell, 95 Fla. 345, 116 So. 81, 83 (1928)). For, “if any state of fact, *1044 known or to be assumed, justifies the law, the court’s power of inquiry ends; questions as to the wisdom, need or appropriateness are for the legislature.” Fulford v. Graham, 418 So.2d 1204, 1205 (Fla. 1st DCA 1982).
As the trial court correctly recognized, this case is governed by Schrader v. Florida Keys Aqueduct Auth., 840 So.2d 1050 (Fla.2003). In Schrader, the Florida Supreme Court addressed the constitutionality of a statute- that authorized the local governments of a single county, designated as being an “area of critical state concern,” to pass wastewater laws more restrictive than those provided for under general law. Id. at 1051-52. The Court concluded that, because the primary purpose of the statute was to protect a natural state resource, the nearshore waters of the state’s keys, the statute was a general law relating to a state function. Id. at 1057. The Court explained:
[I]f a law utilizes a classification that is geographical in its terms but the purpose of the statute is one of statewide importance and impact, and the classification is reasonably related to the law’s purpose, it is a valid general law. See State v. Leavins, 599 So.2d 1326, 1336-37 (Fla. 1st DCA 1992)(law prohibiting use of mechanized dredge or rake for oyster harvesting in Apalachicola Bay is valid general law because shellfishing industry has statewide importance and impact and Apalachicola Bay is area of critical state concern that produces ninety percent of state’s commercial oyster harvest). In this instance, the section of the statute being challenged is part of a general statutory scheme to environmentally protect areas which have been legislatively designated as being of “critical state concern.”
[[Image here]]
However, we do not conclude that the legislative designation of “critical state concern” in this statute is a “guise” for the purpose of adopting a special law as a general law. Rather, we accept that the primary purpose of this statute is one of statewide importance and impact. It provides to local governments in the area designated as being of “critical state concern” the authority to enact stricter regulations regarding the treatment of wastewater in order to protect a vital natural resource of the state: the nearshore waters of the Florida Keys. This natural resource is one of statewide importance, as evidenced by not only the designation of the area as one of critical state concern but also by its direct relationship with industries of statewide importance such as tourism and seafood. Its actual impact, therefore, far exceeds the limited geographic area of Monroe County. Section 4 is thus a “law relating to a state function,” the protection of an area of critical state concern....
Id. at 1056.
The Court has long recognized that programs involving state functions can have local objects without being considered a local or special law. In State ex rel. Gray v. Stoutamire, 131 Fla. 698, 179 So. 730, 733 (Fla.1938), the Court explained:
The terms “special or local laws ” as used in the Constitution refer ordinarily to law relating to entities, interests, rights, and functions other than those of the State, since the organic law does not contemplate or require previous publication of notice of proposed laws for the exercise of State powers and functions though they may be more or less local or special in their operation or objects. For example, the establishment of counties and of courts authorized by the Constitution, fixing the terms of courts of the State, the creation of offices, the disposition of State funds and property, and many other attributes of [sovereignty].
*1045 (Citations omitted)(emphasis supplied); see also St. Johns River Mgmt. Dist. v. Deseret Ranches of Florida, Inc., 421 So.2d 1067, 1069 (Fla.1982); Dep’t of Legal Affairs v. Sanford-Orlando Kennel Club, 484 So.2d 879, 881 (Fla.1983).
Like the statute in Schrader, the Act was enacted as a part of a statewide program. Further, although the Act on its face applies only within Miami-Dade County, because of the size of the Medicaid population there, the efficient administration of the Medicaid program in MiamiDade has a material impact on the statewide Medicaid program. Given the facts here, as AHCA argues, the legislature could reasonably have determined that structuring the Medicaid program in Miami-Dade County in a manner that would increase the enrollee base of smaller managed care plans would foster competition for Medicaid services in Miami-Dade County. In turn, this enhanced competition would increase the efficiency and effectiveness of Medicaid managed care plans statewide by assuring a greater number of established and financially viable plan providers in the state’s largest Medicaid market. We do not conclude that the statute is a “guise” for the purpose of adopting a special law as a general law. Schrader, 840 So.2d at 1056.
Humana argues that reversal is required by this court’s recent decision in Martin Mem’l Med. Ctr., Inc. v. Tenet Healthsystem Hosps., Inc., 875 So.2d 797 (Fla. 1st DCA 2004). We find Martin Memorial distinguishable. There, the legislature had enacted a statute which authorized AHCA to issue hospitals in Palm Beach, Polk, Martin, St. Lucie and Indian River Counties exemptions from certificate of need review for the establishment of open-heart surgery programs. The trial court found the statute unconstitutional as a special or local law which had not been adopted in compliance with Article III, section 10 of the Florida Constitution. This court affirmed, holding that the subject statute
creates an exemption that is available only to hospitals located in five counties, and there is no possibility of it applying to hospitals in any other counties. We conclude that, because it creates a closed class limited to five counties, the trial court correctly determined that chapter 2003-289 is a special or local law.
Id. at 802. Martin Memorial expressly distinguished Schrader:
[A] valid general law can use a classification that is geographical in terms if the purpose of the statute is one of statewide importance and impact, and the classification is reasonably related to the law’s purpose. Schrader, 840 So.2d at 1055-56, and cases cited therein. However, as pointed out by appellees, this line of cases can be distinguished because the cases involved laws dealing with protected water bodies, water resource management, and transportation systems that had impacts far exceeding the limited geographical area identified in the laws themselves. No such impacts are involved in this case. Appellants’ arguments to the contrary are strained and unpersuasive.
Id. at 803 (citations omitted).
While no significant statewide impacts existed in Martin Memorial, in the case under review, as the trial court found, and as we agree, the operation of the Medicaid program in Miami-Dade County has a material statewide impact on the entire Medicaid program. Accordingly, we affirm the trial court’s summary final judgment.
AFFIRMED.
POLSTON and HAWKES, JJ., Concur.